UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11954-RWZ

BRANDON CALLENDER

v.

STEVEN SILVA

<u>MEMORANDUM OF DECISION</u>

February 6, 2020

ZOBEL, D.J.

A jury found petitioner Brandon Callender guilty of second-degree murder and assault and battery by means of a dangerous weapon after trial in the Bristol County Superior Court. The Massachusetts Appeals Court upheld his conviction and the Supreme Judicial Court of Massachusetts denied further appellate review. Petitioner now seeks a writ of habeas corpus, 28 U.S.C. § 2254, claiming that the trial and conviction violated his constitutional rights.

**I. Background**

On April 4, 2008, following an event at the VFW Hall in Fairhaven, Massachusetts, forty to fifty people ended up in a brawl, during which brothers Patrick and Joshua Fitzgerald were stabbed. Patrick recovered, but Joshua died on the way to the hospital from a stab wound to his liver. No eyewitness identified petitioner as the stabber. Therefore, at trial, the Commonwealth presented circumstantial evidence to

identify him as the assailant together with three putative admissions by him regarding the stabbing.  Upon his conviction, he was sentenced to a mandatory life sentence for the murder count and, for the assault and battery with a dangerous weapon count, to five to eight years to commence on and after the first sentence.

On appeal to the Massachusetts Appeals Court, petitioner argued[1] that he was entitled to dismissal of the charges because the evidence, even when viewed in the light most favorable to the Commonwealth, failed to establish his identity as the stabber. The Appeals Court affirmed the convictions.  The Supreme Judicial Court denied his application for further appellate review.  Commonwealth v. Callender, 56 N.E.3d 828 (Mass. 2016).  He now seeks a writ of habeas corpus.

## II.     Legal Standard

A federal court may grant habeas relief if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established Federal law if it "applies a rule that contradicts the governing law set forth in the [Supreme] Court's cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result." Price v. Vincent, 538 U.S. 634, 635 (2003).  An "unreasonable application" is one that is more than merely incorrect; it must be "objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409 (2000).

Federal courts should be "particularly cautious" about issuing the writ on the ground that the evidence was insufficient to support a jury's guilty verdict where that

---

[1] Among other claims he does not raise to this court.


verdict was affirmed by the state appellate court and there was no constitutional error in the conduct at trial. Hurtado v. Tucker, 245 F.3d 7, 19–20 (1st Cir. 2001).

## II.     Analysis

Petitioner does not challenge the Appeals Court's recapitulation of the facts; wherefore, they are deemed correct, see 28 U.S.C. 2254(e)(1), and recited as follows:

> Joshua Fitzgerald, Patrick Fitzgerald (Joshua's younger brother), and their friend Bob Williams drove to the VFW Hall in Fairhaven for an event. They planned to meet their brothers, Joseph and Ethan Fitzgerald, and other friends. At the VFW hall Joshua got into an argument with someone else attending the event. An extended melee involving forty to fifty people, either as participants or close onlookers, ensued. Joshua, Patrick, Joseph, Ethan, and their friends were outnumbered. The fighting extended outward from the premises of the VFW hall into the street and eventually to the parking lot of a nearby liquor store. As Patrick was attempting to fight off his attackers, he heard Joseph revving his car engine and shouting at him. A friend, Robert Sylvia, was in the front passenger seat. Patrick jumped into the car and insisted that they stop and find Joshua before departing. A few minutes earlier, Joshua had been seen shirtless and swinging a two-by-four at some of his attackers. When they found Joshua, Patrick guided him to the car; they entered the back seat with Joshua sitting on the right side and Patrick on the left side.
>
> A group of about five people then surrounded the car to keep it from moving. An African–American male with an "Afro" and a tan or light-colored hair pick opened the car door on Joshua's side and said, "Everybody's getting poked." He then swung a knife around and stabbed Joshua in the abdomen. Patrick tried to pull Joshua away and was struck on the right wrist by the knife. Someone pulled Joshua out of the car, and he fled. Eventually, Patrick found Joshua a few blocks away, and he got back into the car.
>
> As the group headed to the hospital, Patrick felt pain and was bleeding from his stomach, back, and wrist. Joshua had lost consciousness by the time they arrived at the hospital; he had sustained a stab wound to his abdomen which penetrated the liver. He also sustained blunt force trauma to his head, and abrasions and contusions on his arms and hands. He did not regain consciousness. The medical examiner determined his cause of death to be the blood loss caused by the stab wound to his abdomen with injury to his liver.

> Earlier on the night of the incident, Stacey Pettey had arrived with the defendant at the VFW Hall; she described him as having an Afro-type hairstyle. When someone yelled there was a fight outside, the defendant ran outside while Pettey stayed inside. Ten minutes later, the defendant came back inside and went to the bathroom, then came back out and sat with Pettey. The two left, walking to a nearby Dunkin' Donuts, and then got into a friend's car. During the ride, the defendant told Pettey that his arm was hurting and he had gotten into a fight and that he thought he had stabbed someone. Later that night, he again complained that his arm hurt, that he had been hit by a two-by-four, and that he may have stabbed someone. . . .
>
> Two recorded phone calls made by the defendant to his sister from jail were introduced in evidence. In the first call, the defendant stated that "[i]t's not like, like, actually like I wanted to . . . murder him." In the second call, the defendant discussed his case with his sister and admitted that he sought a knife to use in the fight as he "felt like [his] life was threatened." He denied "open[ing] the car door to shank [Joshua]" but admitted he stabbed the person who was "outside the car still trying to swing the . . . two-by-four around."

Callender, 89 Mass. App. Ct. 1121 at *1–*2.

The Appeals Court reviewed Mr. Callender's case under the Jackson v. Virginia, 443 U.S. 309 (1979), standard as adopted by Commonwealth v. Latimore, 378 Mass. 671 (1979).  The Jackson question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. Petitioner asserts that the court unreasonably applied the Jackson standard, relying on the principle that when "the evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence . . . the court must reverse the conviction." United States v. Flores-Rivera, 56 F.3d 319, 323 (1st Cir. 1995).  While the Appeals Court did not specifically address this argument, I cannot say that its holding was unreasonable because, in short, the evidence does not equally support both theories.

4

The circumstantial evidence is as follows. First, a witness in the car in which the victim was stabbed testified that the assailant was wearing a light-colored, tan, or white hair pick. A similar hair pick bearing petitioner's DNA[2] was found in the middle of the street where the brawl took place. That evidence not only placed petitioner at the scene, but also confirmed that he and the stabber, if not the same person, were wearing a remarkably similar and unique hair accessory. Second, petitioner was seen going into the bathroom of the VFW after the fight. A t-shirt recovered from the bathroom trash bore blood linked to Joshua and Patrick and DNA linked to Mr. Callender.[3] Third, a knife with Patrick and Joshua's DNA, but none from the petitioner, was found at the scene.

Finally, the most incriminating pieces of evidence were Mr. Callender's admissions to his friend, Stacey Pettey, and to his sister. On the night of the brawl, petitioner told Ms. Pettey he "may have" stabbed someone. Later, in recorded telephone calls from the jail to his sister, he admitted stabbing the person who was "still trying to swing the…two-by-four around" but denied opening the car door to do so. Although another stabbing victim had been seen swinging a piece of laminate flooring

---

[2] "The DNA analyst testified that the probability of a randomly selected unrelated individual having contributed DNA to the mixture found on the hair pick was approximately one in 565.5 million of the Caucasian population, one in 34 million of the African-American population, one in 1.9 billion of the Hispanic population, and one in 4.9 billion of the Asian population." Callender, 89 Mass. App. Ct. 1121 at *2 n.6.

[3] The probability of a randomly selected unrelated individual having a DNA profile matching that obtained is approximately one in 11.97 quintillion of the Caucasian population, one in 110.2 quadrillion of the African-American population, one in 33.22 quintillion of the Hispanic population, and one in 18.44 quintillion of the Asian population. Callender, 89 Mass. App. Ct. 1121 at *3 n.9.

that night, the Appeals Court noted that Joshua was the only person observed wielding a two-by-four.  Callender, 89 Mass. App. Ct. 1121 at *2.

Petitioner, citing United States v. Valerio, 48 F.3d 58, 64 (1st Cir. 1995), argues the jury was forced to "stack inference upon inference" to identify him as the Fitzgerald brothers' assailant.  Valerio involved a conviction for possession with intent to distribute cocaine where the jury had to infer knowledge, then possession, then intent to distribute, in that sequence.  But here the inferences are not stacked one atop another as steps in a logical chain.  Rather, the pieces of evidence in this case are independent of each other, but reinforce one another.  In cases based on circumstantial evidence, courts "face head-on the disturbing truth that guilty verdicts rest on judgments about probabilities." O'Laughlin v. O'Brien, 568 F.3d 287, 300 (1st Cir. 2009). These judgments are "usually intuitive rather than scientific." Id.

When viewed together, the probabilities in this case render the Appeals Court's ruling eminently reasonable. Petitioner's conversations with his sister and with Ms. Pettey easily lead to the conclusion that he did stab someone that night.  And the discarded bloody t-shirt brings him within proximity of Joshua and Patrick's wounds, increasing the probability that Joshua was the person he stabbed.  The evidence that Joshua's assailant was an African-American male wearing an "Afro" and a light-colored, tan, or white hair pick, while not conclusive of petitioner's guilt, is nonetheless probative. It is further supported by the DNA analyst's conclusion that petitioner was a potential contributor to DNA found on a hair pick of the same description.

Finally, petitioner points to the absence of DNA on the knife as evidence of his innocence.  And while the argument is compelling, it was also reasonable for the

Appeals Court to conclude that the jury "could have inferred" that Mr. Callender obtained the knife shortly before the stabbing and thus the lack of DNA "did not exculpate him." Callender, 89 Mass. App. Ct. at *3.

In viewing this evidence as whole, the conclusion is reasonable that the probabilities of guilt and innocence are not equal.

### III. Conclusion

The petition for a writ of habeas corpus (Docket # 1) is DENIED. Judgment may be entered accordingly.

The interpretation of the evidence by the state courts, while reasonable in my view, may be seen through other eyes as inadequate to support the conviction and thus in violation of petitioner's federal constitutional rights. A certificate of appealability is hereby issued.

| | |
|---|---|
| February 6, 2020 | /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |